UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| SPENCER NEAL,<br><br>Plaintiff,<br><br>v.<br><br>RB SEELBACH LLC,<br><br>&<br><br>BRG HOLDINGS LLC,<br><br>Defendants. | CASE NO.: 3:26-CV-629-DJH<br><br>Chief Judge David J. Hale<br><br>**<u>COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:</u>**<br><br>**<u>1ST CAUSE OF ACTION:</u>** For Denial of Access by a Public Accommodation in Violation of the Americans with Disability Act of 1990 ("Title III" and "ADA"), 42 U.S.C. §§ 12181 *et seq*.<br><br>**<u>2ND CAUSE OF ACTION:</u>** For Denial of Access by a Public Accommodation in Violation of the Kentucky Civil Rights Act, KRS 344, *et seq.*<br><br>**<u>3RD CAUSE OF ACTION:</u>** For Violations of the Kentucky Consumer Protection Act. |

Plaintiff Spencer Neal complains of Defendants RB Seelbach LLC and BRG Holdings LLC and alleges as follows:

**INTRODUCTION:**

1. This is a civil rights action for discrimination against persons with physical disabilities, of which plaintiff is a member of, for failure to remove architectural barriers structural in nature at Defendants' properties, places of public accommodation, thereby discriminatorily denying plaintiff access to, the full and equal enjoyment of, opportunity to participate in, and benefit from, the goods, facilities, services, and accommodations thereof. Plaintiff seeks injunctive relief and damages pursuant to the Americans with Disability Act of 1990 ("title III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, the Kentucky Civil Rights Act, KRS

344, *et seq.*, and the Kentucky Consumer Protection Act.

2. Plaintiff Spencer Neal is a person with physical disabilities who, on or about August 19, 2025, through August 20, 2025, was an invitee, guest, patron, or customer at Defendants' properties, which house the Seelbach Hilton Louisville hotel ("Seelbach Hilton"), located at 500 South Fourth Street, Louisville, KY 40202 and the 522 S. 4th Street Parking Lot, located at 522 South Fourth Street, Louisville, KY 40202. At said time and place, Defendants failed to provide proper legal access to the property, which is a public accommodation and/or public facility. The denial of access was in violation of both federal and Kentucky legal requirements, and Mr. Neal suffered violations of his civil rights to full and equal access and was embarrassed and humiliated.

**JURISDICTION AND VENUE:**

3. **Jurisdiction**: This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq. Pursuant to pendant jurisdiction, attendant and related causes of action, arising from the same nucleus of operative facts and arising out of the same transactions, are also brought under parallel Kentucky law, whose goals are closely tied with the ADA, including but not limited to violations of the Kentucky Civil Rights Act, KRS 344, *et seq.*

4. **Venue**: Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and is founded on the facts that the real property which is the subject of this action is located in this district, in the City of Louisville, County of Jefferson, State of Kentucky and that plaintiff's causes of action arose in this district.

**PARTIES:**

5. Plaintiff Spencer Neal is a "physically handicapped person," a "physically

disabled person," and a "person with physical disabilities." (Hereinafter the terms "physically disabled," "physically handicapped" and "person with physical disabilities" are used interchangeably, as these words have similar or identical common usage and legal meaning.) Mr. Neal is a "person with physical disabilities," as defined by all applicable Kentucky and United States laws. Mr. Neal requires the use of a wheelchair to travel about in public. Consequently, Mr. Neal is a member of that portion of the public whose rights are protected by the ADA and the Kentucky Civil Rights Act.

6. Defendant RB Seelbach LLC, a Kentucky limited liability company and Defendant BRG Holdings LLC, a foreign limited liability company, are the owners and operators, lessors and/or lessees, or agents of the owner, lessor and/or lessee, of the building and/or buildings which constitute a public facility in and of itself, occupied by the Seelbach Hilton hotel, a public accommodation, located at/near 500 South Fourth Street, Louisville, KY 40202, and the 522 S. 4th Street Parking Lot, a public accommodation, located at/near 522 South Fourth Street, Louisville, KY 40202 and are subject to the requirements of Kentucky state law requiring full and equal access to public facilities pursuant to the Kentucky Civil Rights Act, KRS 344, *et seq.*, and subject to the Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, and to all other legal requirements referred to in this complaint.

7. At all times relevant to this complaint, Defendants are the lessees, or agents of the lessee, and/or lessor, of said premises, and owns and operates the subject Seelbach Hilton hotel, as a public facility, at/near 500 South Fourth Street, Louisville, KY 40202, and the 522 S. 4th Street Parking Lot, as a public facility, at/near 522 South Fourth Street, Louisville, KY 40202. The businesses, the Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot, are open to the general public and conducts business therein. The business operating on said premises are public

accommodations subject to the requirements of the Kentucky Civil Rights Act, KRS 344, *et seq*.

8. At all times relevant to this complaint, Defendants are the landlords/lessors, tenants/lessees and the owners and operators of the subject hotel, a public accommodation located at/near 500 South Fourth Street, Louisville, KY 40202, and the parking lot, a public accommodation located at/near 522 South Fourth Street, Louisville, KY 40202. As such, Defendants are jointly and severally responsible, for their individual properties, to identify and remove architectural barriers pursuant to Code of Federal Regulations section 36.201(b), which states in pertinent part:

> **§ 36.201 General**
>
> (b) Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.
>
> CFR §36.201(b)

9. Plaintiff does not know the true names of the Defendants, its business capacities, its ownership connection to the property and business, nor their relative responsibilities in causing the access violations herein complained of. Plaintiff is informed and believes that the Defendant herein is a public accommodation, and is the agent, ostensible agent, master, servant, employer, employee, representative, franchisor, franchisee, partner, and associate, or such similar capacity, of each of the other defendants, if any, and was at all times acting and performing, or failing to act or perform, within the course and scope of his, her or its authority as agent, ostensible agent, master, servant, employer, employee, representative, franchiser, franchisee, partner, and associate, or such similar capacity, and with the authorization, consent, permission or ratification

of each of the other defendants, and is responsible in some manner for the acts and omissions of the other defendants in legally causing the violations and damages complained of herein, and have approved or ratified each of the acts or omissions of each other defendant, as herein described.

**PRELIMINARY FACTUAL ALLEGATIONS:**

10. Defendant RB Seelbach LLC is the entity that is a public accommodation that owns, leases (or leases to), or operates, the Seelbach Hilton hotel, located at 500 South Fourth Street, Louisville, KY 40202. Defendant's Seelbach Hilton hotel and each of its facilities are places "of public accommodation" subject to the requirements of the Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, and the Kentucky Civil Rights Act, KRS 344, *et seq.* Defendant BRG Holdings LLC is the entity that is a public accommodation that owns, leases or leases to), or operates, the 522 S. 4th Street Parking Lot, located at 522 South Fourth Street, Louisville, KY 40202. Defendant's 522 S. 4th Street Parking Lot and each of its facilities are places "of public accommodation" subject to the requirements of the Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, and the Kentucky Civil Rights Act, KRS 344, *et seq.* On information and belief, said facilities have undergone "alterations, structural repairs and additions," each of which has subjected the Seelbach Hilton and the 522 S. 4th Street Parking Lot to handicapped access requirements.

11. Plaintiff Spencer Neal is a person with a disability. Mr. Neal is a "physically disabled person," as defined by all applicable Kentucky and United States laws. Mr. Neal is paralyzed and requires the use of a wheelchair for mobility and to travel in public.

12. At all times referred to herein and continuing to the present time, Defendant RB

Seelbach LLC advertised, publicized and held out the Seelbach Hilton hotel as being handicapped accessible and handicapped usable.

13. For example, on its website, the Seelbach Hilton hotel advertised that the hotel had the following accessible amenities:

a. Accessible business center;

b. Accessible concierge desk;

c. Accessible elevators;

d. Accessible exercise facility;

e. Accessible guest rooms with mobility features with entry or passage doors that provide 32” of clear width;

f. Accessible hotel restaurant;

g. Accessible meeting rooms;

h. Accessible parking spaces for cars in the self-parking facility – said facility is the one belonging to Defendant BRG Holdings LLC; hotel guests are instructed that they should park in BRG Holdings LLC’s lot for their parking needs;

i. Accessible public entrance;

j. Accessible registration desk;

k. Accessible route from the accessible public entrance to the accessible guestrooms;

l. Accessible route from the accessible public entrance to the registration area;

m. Accessible route from the hotel’s accessible public entrance to the business center ;

n. Accessible route from the hotel's accessible public entrance to the exercise facilities;

o. Assistive listening devices for meetings upon request;

p. Audible alarms

q. Bathroom doors at least 32 inches wide;

r. Bedroom doors at least 32 inches wide;

s. Braille elevator;

t. Braille room numbers;

u. Close captioning on televisions or closed captioning decoders;

v. Digital alarm clock available with sound and a vibrating pad;

w. Digital alarm clock available with sound and strobe light;

x. Doorbell w/ Audio/Strobe Alert;

y. Emergency Call Button on Phone;

z. Emergency pull cords bedside bed available;

aa. Emergency pull cords in the bathroom available;

bb. Grab bars in the bathroom;

cc. Lower or Adjustable Closet Rod

dd. Lowered emergency evacuation instructions;

ee. Lowered peep hole in door;

ff. Lowered shelf storage;

gg. Phone Audio/Vibrate/Strobe;

hh. Portable shower chairs;

ii. Raised toilet seat;

jj. Roll-in shower;

kk. Service Animals Welcome

ll. TTY for guest use

mm. Visual alarm for hearing impaired;

nn. Visual alarms for hearing impaired in hallways;

oo. Visual alarms for hearing impaired in public areas.

14. On or about August 17, 2025, relying on the hotel's advertising, Mr. Neal reserved a one-night stay for the purpose of obtaining lodging for August 19, 2025, through August 20, 2025, in one of the hotel's mobility accessible guestrooms, paying $239.10.

15. The purpose of Mr. Neal's visit to Louisville, KY was to tour and enjoy the Louisville Slugger Museum & Factory, located at 800 W Main Street in Louisville, KY, and to fish at the Ohio River.

16. Upon his arrival, during his patronizing of the public accommodations, and upon his exit of the facilities, Mr. Neal personally observed and encountered architectural barriers which discriminated against him and denied him the full and equal access to the properties.

17. At said time and place, Mr. Neal, who is a person with disabilities, observed and encountered the following inaccessible elements of the subject Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot, which constituted architectural barriers and a denial of the proper and legally required access to a public accommodation to persons with physical disabilities. *By way of example and not as an exhaustive inventory of Defendant's violations*, the following barriers to access were personally encountered by Mr. Neal:

**Hotel's Exterior**

a. At the main entrance to the hotel, there are no accessible routes into the building. There exist two entrances which both require one to traverse over multiple stairs to gain entry. Additionally, there are no signs, which contain the International Symbol of Accessibility, to guide a person with a mobility disability to the accessible entrance. Here, Mr. Neal was stuck waiting outside until a hotel representative noticed him and approached him to show where the accessible entrance was; this process lasted over 15 minutes.

b. At the accessible entrance, which happens to be a far walk from the main entrance and car-passenger loading area, there is no sign which contains the International Symbol of Accessibility, that guides a person with a mobility disability to the accessible entrance. Here, Mr. Neal had no way of knowing this was the entrance the hotel holds out as accessible, which is why he went to the main entrance.

**Hotel's Lobby**

c. At the lobby's reception desk, there is no lowered portion of the counter to accommodate a person using a wheelchair. Additionally, the credit card machines are too high off the ground for a person in a wheelchair to use independently. Here, Mr. Neal was prevented from interacting with hotel staff on an equal basis; the interaction made him feel belittled. Additionally, reaching the high card reader was physically difficult for Mr. Neal, who has limited shoulder mobility from a prior injury, causing him pain and discomfort.

**Vending and Ice Areas**

d. At the eighth-floor vending and ice room, there lacks sufficient clear floor space at the ice machine. Upon information and belief, the lack of clear floor space is common throughout all vending and ice stations. Here, this barrier prevented Mr. Neal from approaching the ice machine as intended to obtain ice.

**Mobility Accessible Guestroom Number 830**

e. Upon entering guestroom 830, Mr. Neal experienced an excessive door pressure. This excessive door pressure made it physically demanding for Mr. Neal to open the door, followed by pushing it open wide enough to enter the guestroom while carrying his belongings.

f. At the guestroom's entry door, there existed a locking mechanism which was too high off the ground, in excess of 48". This barrier made it physically difficult for Mr. Neal to lock his room door as he has limited shoulder mobility from a prior injury, causing him pain and discomfort.

g. At the guestroom's entry door, the emergency exit map was well above 48" high from the ground. Mr. Neal was prevented from reading the map to learn where to go in his wheelchair in case of an emergency.

h. Inside the guestroom, there existed a thermostat which was too high off the ground, in excess of 48". This barrier made it physically difficult for Mr. Neal to control the temperature within his guestroom as he has limited shoulder mobility from a prior injury, causing him pain and discomfort.

i. Inside his guestroom, there lacked 18" of latch-side clearance to exit the guestroom from the inside due to the placement of the bedside table. Here, due to this deficiency, Mr. Neal was forced to pull a heavy door in upon himself while reversing the direction of his wheelchair. As a result of this barrier, Mr. Neal sustained a cervical strain and a strain to his left shoulder which he has had prior injury to.

j. Inside his guestroom, the width to enter the room's closet was less that 22". As there was no accessible route to enter the closet, Mr. Neal was prevented from using the room's closet, including the safe, luggage rack, iron, hangers, and clothes rod. Mr. Neal was unable to use the hangers at all because they were positioned too high off the ground in a confined space.

k. Inside his guestroom, there lacked adequate knee clearance under the room's desk. Due to this barrier, Mr. Neal was unable to pull his wheelchair under the accessible guestroom's desk and use it as intended.

l. Inside his guestroom, the blind pulls exceeded 58" high from the ground. This barrier made it physically difficult for Mr. Neal to open and close his room's blinds as he has limited shoulder mobility from a prior injury, causing him pain and discomfort.

m. Inside his guestroom, a chair blocked the accessible route to the bathroom, reducing the accessible route to less than 31". Here, having to use the toilet, Mr. Neal was forced to move heavy furniture from its original position to enter the bathroom, further causing strain to his neck and shoulder.

n. In his guestroom's bathroom, the reflective portion of the mirror above the lavatory exceeded 40" high from the ground. This barrier prevented Mr. Neal from using the mirror as intended; he could only see a portion of his head and face when using the lavatory.

o. In his guestroom's bathroom, the tissues, hair dryer, extra toilet paper, and folding mirror were all placed in excess of 48" high off the ground. The placement of these items prevented Mr. Neal from reaching them from his wheelchair over the toilet.

p. In his guestroom's bathroom, there lacked a rear grab bar at the toilet and the side grab bar was not positioned correctly and was loose and unstable, pulling away from the wall. Additionally, the flush handle was on the wrong side of the toilet and the toilet paper was not installed correctly. These barriers further strained Mr. Neal's neck and shoulder when transitioning on and off the toilet from his wheelchair and when he was forced to reach clear across the toilet to flush.

q. In his guestroom's bathroom, the toilet's side grab bar obstructs the entrance to the roll-in shower, which was not the required 60" wide. There existed a grab bar on the shower's seat wall, which prevented Mr. Neal from using the shower seat as intended, and the back wall's grab bar also extends into the seat area. The shower controls are placed on the side

wall rather than the rear wall, and the portable shower head was placed at around 57" high. Additionally, the three soap dispensers' operating controls on the wall exceeded 48" high. Here, the configuration of the shower made it extremely difficult for Mr. Neal to use. He could not control the shower from the shower's seat and he could not reach the portable shower head to wash his body as intended. Mr. Neal was forced to stretch and reach his body in painful ways just to try to shower, all while attempting to balance his body to prevent falling. These barriers further strained Mr. Neal's neck and left shoulder, as well as causing pain to his entire back, right shoulder and wrists.

**Gatsby's on Forth**

r. There are no accessible dining tables throughout Gatsby's on Forth which are suitable for use by a person in a wheelchair. Due to the tables' base configuration, there lacked proper knee and toe clearance. As such, Mr. Neal was prevented from pulling his wheelchair under the table and use it as intended.

s. At the breakfast buffet, there were various food items which were positioned at heights greater than 48" high off the floor. These barriers made it physically difficult or impossible for Mr. Neal to obtain breakfast as he has limited shoulder mobility from a prior injury, causing him pain and discomfort.

**The Old Seelbach Bar**

t. There are no accessible dining tables throughout The Old Seelbach Bar which are suitable for use by a person in a wheelchair. Due to the tables' base configuration, there lacked proper knee and toe clearance. As such, Mr. Neal was prevented from pulling his wheelchair under the table and use it as intended.

u. At the bar, there is no lowered accessible space for a person who uses a wheelchair. Also, there is no accessible seating in direct proximity to the bar. As such, Mr. Neal was unable to enjoy the atmosphere and comradery that the bar offers its patrons.

**Unisex Public Restroom**

v. Under the lavatory, the hot and cold water pipes were not properly insulated. This barrier prevented Mr. Neal from pulling under the sink and use it as intended.

w. Both the toilet's side and rear grab bars were not positioned correctly and the toilet paper and toilet seat dispensers obstructed the grab bar, making Mr. Neal's transfer and use of the toilet more physically difficult than usual.

**Other Hotel Amenities**

x. Upon information and relief, the other mobility accessible guest rooms are inaccessible to the mobility-disabled in violation of 2010 ADAS Section 224.2.

y. Upon information and belief, the accessible guestrooms are not dispersed among the various classes of sleeping accommodations in violation of 2010 ADAS Section 224.5.

z. Upon information and belief, the vanity counter top spaces provided is not comparable to non-accessible rooms in violation of 2010 ADAS Section 806.2.4.1.

aa. On personal knowledge, information and belief, other public facilities and elements too numerous to list were improperly inaccessible for use by persons with physical disabilities.

**522 S. 4th Street Parking Lot**

bb. There are approximately 38 parking spaces at the 522 S. 4th Street Parking Lot. There exist no marked accessible parking spaces, marked van accessible parking spaces or access aisles. This barrier made it impossible for Mr. Neal to park in an accessible parking space which could accommodate his vehicle and disability. As a result, Mr. Neal's vehicle became trapped between another vehicle on the driver's side. Mr. Neal was unable to enter his vehicle until the vehicle's owner came to move his vehicle, causing Mr. Neal to wait for an extended amount of unwarranted time.

cc. At the parking pay station, there exists a large curb at the station, which was totally impassable for Mr. Neal. Due to this barrier, Mr. Neal was forced to ask for help to pay for his parking; he could not do so independently. Having to wait to ask for help caused Mr. Neal stress as it was late and dark and caused him great embarrassment.

18. At all times stated herein, the existence of architectural barriers at Defendants' places of public accommodation evidenced "actual notice" of Defendants' intent not to comply with the Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, and the Kentucky Civil Rights Act, KRS 344, *et seq.*, either then, now or in the future.

19. As a legal result of Defendants' failure to act as a reasonable and prudent public accommodation in identifying, removing or creating architectural barriers, policies, practices and procedures that denied access to plaintiff and other persons with disabilities, plaintiff suffered damages as alleged herein.

20. As a further legal result of the actions and failure to act of Defendants, and as a legal result of the failure to provide proper handicapped-accessible public facilities as set forth herein, Mr. Neal was denied his civil rights to full and equal access to public facilities. Mr. Neal

suffered a loss of his civil rights and his rights as a person with physical disabilities to full and equal access to public facilities, and further suffered from personal injury, shame, humiliation, embarrassment, anger, disappointment and worry, expectedly and naturally associated with a person with physical disabilities being denied access, all to his damages as prayed hereinafter in an amount within the jurisdiction of this court.

21. On information and belief, construction alterations carried out by the Defendants have triggered access requirements under Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, and the Kentucky Civil Rights Act, KRS 344, *et seq.*

22. Mr. Neal, as described herein below, seeks injunctive relief to require the Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot to be made accessible to meet the requirements of both Kentucky law and the Americans with Disabilities Act, whichever is more restrictive, so long as the Defendants operate and/or lease the Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot as a public facility. Plaintiff seeks damages for violation of his civil rights, from the date of his visit until such date as Defendants bring the establishment into full compliance with the requirements of Kentucky and federal law.

23. On information and belief, Defendants have been negligent in its affirmative duty to identify the architectural barriers complained of herein and negligent in the removal of some or all of said barriers.

24. Because of Defendants' violations, Mr. Neal and other persons with physical disabilities are unable to use public facilities such as those owned and operated by Defendants on a "full and equal" basis unless such facility is in compliance with the provisions of the Americans with Disabilities Act and other accessibility law as plead herein. Plaintiff seeks an order from this court compelling Defendants to make the Seelbach Hilton hotel and the 522 S. 4th

Street Parking Lot accessible to persons with disabilities.

25. Plaintiff is informed and believes and therefore alleges that Defendants caused the subject properties to be constructed, altered and/or maintained in such a manner that persons with physical disabilities were denied full and equal access to, within and throughout said facilities of the Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot and were denied full and equal use of said public facility. Further, on information and belief, Defendants have continued to maintain and operate said facility in such conditions up to the present time, despite actual and constructive notice to such Defendants that the configuration of the establishment and/or its building(s) are in violation of the civil rights of persons with physical disabilities, such as plaintiff and the disability community. Such construction, modification, ownership, operation, maintenance and practices of such public facilities are in violation of law as stated in Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.* and elsewhere in the laws of Kentucky.

26. On information and belief, the subject public facilities of the Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot denied full and equal access to plaintiff and other persons with physical disabilities in other respects due to noncompliance with requirements of the Kentucky Civil Rights Act, KRS 344, *et seq.*

27. On personal knowledge, information and belief, the basis of Defendants' actual and constructive notice that the physical configuration of the facilities including, but not limited to, architectural barriers constituting the Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot was in violation of the civil rights of persons with physical disabilities, such as plaintiff, includes, but is not limited to, communications with invitees and guests, owners of other establishments and businesses, notices Defendant obtained from governmental agencies upon

modification, improvement, or substantial repair of the subject premises and other properties owned by the Defendant, newspaper articles and trade publications regarding the Americans with Disabilities Act and other access laws, public service announcements, and other similar information. Defendants' failure, under state and federal law, to make the establishment accessible is further evidence of Defendants' conscious disregard for the rights of plaintiff and other similarly situated persons with disabilities. The scope and means of the knowledge of Defendants are within Defendants' exclusive control and cannot be ascertained except through discovery.

28. Plaintiff will return to the subject Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot to patronize the facility, if it is made fully accessible to a disabled person in a wheelchair, and to also avail himself of the hotel and parking lot's services. Defendants' hotel and parking lot are currently not accessible; Mr. Neal cannot return to the hotel and parking lot while they are inaccessible, unsafe and dangerous for a person in a wheelchair to use.

29. Should the Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot become accessible, Mr. Neal will visit them again because he will travel to Jefferson County, Kentucky from June 25, 2027, through June 27, 2027, when he attends an event at the Kentucky Expositions Center in Louisville, KY.

30. Furthermore, after this litigation resolves, whether by judgment or by settlement, and if Defendants are ordered to or agree to remediate their deficiencies, Mr. Neal will return to the Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot after the deadline for making remediations to ascertain whether Defendants removed the barriers to access which are the subject of this litigation.

## I. FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §12101, *et seq*.)

31. Plaintiff pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 30 of this complaint.

32. Pursuant to law, in 1990, the United States Congress made findings per 42 U.S.C. §12101 regarding persons with physical disabilities, finding that laws were needed to more fully protect:

> some 43 million Americans with one or more physical or mental disabilities; [that] historically society has tended to isolate and segregate individuals with disabilities; [that] such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; [that] the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals; [and that] the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous.

33. Congress stated as its purpose in passing the Americans with Disabilities Act of 1990 (42 U.S.C. §12102):

> It is the purpose of this act (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and (4) to invoke the sweep of Congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day to day by people with disabilities.

34. As part of the Americans with Disabilities Act of 1990, (hereinafter the "ADA"), Congress passed "Title III - Public Accommodations and Services Operated by Private Entities"

(Section 301 42 U.S.C. §12181, *et seq*.). Among the public accommodations identified for purposes of this title was:

> (7) PUBLIC ACCOMMODATION - The following private entities are considered public accommodations for purposes of this title, if the operations of such entities affect commerce -
> . . .
> (A) an inn, hotel, motel, or other place of lodging ***;
>
> 42 U.S.C. §12181(7)(A).

35. Pursuant to §302, 42 U.S.C. §12182, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation."

36. The specific prohibitions against discrimination set forth in §302(b)(2)(a), 42 U.S.C. §12182(b)(2)(a) are:

> (i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;
>
> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;
>
> (iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility,

> privilege, advantage, or accommodation being offered or would result in an undue burden;
>
> (iv) a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable; and
>
> (v) where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages or accommodations available through alternative methods if such methods are readily achievable.

37. The acts of Defendants set forth herein were a violation of plaintiff's rights under the ADA, 42. U.S.C. §§ 12181 *et seq.*, and the Kentucky Civil Rights Act, KRS 344, *et seq.*, making available damage remedies.

38. The removal of the barriers complained of by plaintiff as hereinabove alleged was at all times after January 26, 1992 "readily achievable" as to the subject Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot pursuant to 42 U.S.C. §12182 (b)(2)(A)(i)-(iv). On information and belief, if the removal of all the barriers complained of herein together was not "readily achievable," the removal of each individual barrier complained of herein was "readily achievable." On information and belief, Defendants' failure to remove said barriers was likewise due to discriminatory practices, procedures and eligibility criteria, as defined by §302(b)(2)(a)(i)-(iii); 42 U.S.C. §12182 (b)(2)(A)(i).

39. Per §301(9), 42 U.S.C. §12181 (9), the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." The statute defines relative "expense" in part in relation to the total financial resources of the entities involved. Plaintiff alleges that properly repairing, modifying, or altering each of the items that plaintiff complains of herein were and are "readily achievable" by the Defendants under the standards set forth under §301(9) of the Americans with Disabilities Act. Further, if it was not

"readily achievable" for Defendants to remove each of such barriers, Defendants have failed to make the required services available through alternative methods which were readily achievable.

40. On information and belief, construction work on, and modifications of, the subject Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot occurred after the compliance date for the Americans with Disabilities Act, January 26, 1992, independently triggering access requirements under Title III of the ADA.

41. Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12188, *et seq*., §308, plaintiff is entitled to the remedies and procedures set forth in §204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as plaintiff is being subjected to discrimination on the basis of disability in violation of this title or has reasonable grounds for believing that he is about to be subjected to discrimination in violation of §302. Plaintiff cannot return to or make use of the public facilities complained of herein so long as the premises and Defendants' policies bar full and equal use by persons with physical disabilities.

42. Per §308(a)(1) (42 U.S.C. 12188), "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title does not intend to comply with its provisions." Pursuant to this last section, plaintiff has not returned to Defendants' premises since on or about August 19, 2025, through August 20, 2025, but alleges that Defendants have continued to violate the law and deny the rights of plaintiff and of other persons with physical disabilities to access this public accommodation. Pursuant to §308(a)(2), "In cases of violations of §302(b)(2)(A)(iv) . . . injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title."

43. Plaintiff seeks relief pursuant to remedies set forth in §204(a) of the Civil Rights

Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to federal regulations adopted to implement the Americans with Disabilities Act of 1990, including but not limited to an order granting injunctive relief and attorneys' fees. Plaintiff will seek attorneys' fees conditioned upon being deemed to be the prevailing party.

44. Plaintiff seeks damages pursuant to the Kentucky Civil Rights Act, KRS 344, *et seq.*, which provide, within the statutory scheme, that a violation of the ADA and/or Kentucky's accessibility standards is a violation of Kentucky law.

Wherefore, plaintiff prays for relief and damages as hereinafter stated.

**II. SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT, KRS 344, ET SEQ.**

45. Plaintiff repleads and incorporates by reference as if fully set forth again herein, the allegations contained in paragraphs 1 through 44 of this complaint.

46. At all times relevant to this action, the Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot and the businesses therein, are "places of public accommodation" pursuant to KRS 344.130.

47. Defendants committed an unlawful act pursuant to KRS 344.120 by denying Plaintiff his full and equal enjoyment of its goods, services, accommodations, advantages, facilities, or privileges at its place of public accommodation because of a disability.

48. Plaintiff has desired and attempted to enjoy the goods and services at the Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot as a customer. He has been prevented from doing so do to the existing architectural barriers at the property. As a result, he has been distressed and inconvenienced thereby, and is entitled to monetary damages for his injuries, as provided for in KRS 344.450.

49. As a result of being denied full access to the property, Plaintiff has suffered, and will

continue to suffer, personal injury, emotional distress, humiliation, anxiety, anger, a loss of enjoyment of life, and other consequential and incidental damages.

50. Pursuant to Kentucky law, plaintiff is entitled to compensatory and punitive damages, and attorney fees and costs, in an amount to be determined at trial, as well as issuance of an injunction requiring Defendant to allow full and equal enjoyment of its goods, services, facilities, privileges, and advantages to disabled persons.

Wherefore, plaintiff prays for relief and damages as hereinafter stated.

## III. THIRD CAUSE OF ACTION FOR VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT

51. Plaintiff repleads and incorporates by reference as if fully set forth again herein, the allegations contained in paragraphs 1 through 50 of this complaint.

52. By engaging in the course of conduct alleged herein, Defendant RB Seelbach engaged in unfair, false, misleading, and/or deceptive acts or practices in the conduct of trade and/or commerce.

53. Mr. Neal is within the class of people the Kentucky legislature intended to protect with the Kentucky Consumer Protection Act.

54. Defendant RB Seelbach made false, unfair, deceptive, or misleading statements and acts to Mr. Neal, including, but not limited to the following:

Advertising on its website the Seelbach Hilton hotel had the following accessible amenities:

a. Accessible concierge desk;

b. Accessible elevators;

c. Accessible guest rooms with mobility features with entry or passage doors that provide 32” of clear width;

d. Accessible hotel restaurant;

e. Accessible parking spaces for cars in the self-parking facility;

f. Accessible public entrance;

g. Accessible registration desk;

h. Accessible route from the accessible public entrance to the accessible guestrooms;

i. Accessible route from the accessible public entrance to the registration area;

j. Accessible route from the hotel's accessible public entrance to the exercise facilities;

k. Bathroom doors at least 32 inches wide;

l. Bedroom doors at least 32 inches wide;

m. Grab bars in the bathroom;

n. Lower or Adjustable Closet Rod

o. Lowered emergency evacuation instructions;

p. Lowered peep hole in door;

q. Lowered shelf storage;

r. Portable shower chairs;

s. Raised toilet seat;

t. Roll-in shower;

55. Said false, unfair, deceptive and misleading advertising induced Mr. Neal, a person with a disability who uses a wheelchair, to stay at the Seelbach Hilton hotel.

56. As a result of the above acts and practices, Defendant has violated the Kentucky Consumer Protection Act, KRS 367.170, *et seq.*

57. As a result of the foregoing deceptive acts and practices, Defendant has caused damages incurred by Mr. Neal.

58. Mr. Neal is entitled to consequential and punitive damages, pre-judgment interest

and attorney fees under the Kentucky Consumer Protection Act, KRS 367.170, *et seq*.

Wherefore, plaintiff prays for relief and damages as hereinafter stated.

**PRAYER:**

Wherefore, Plaintiff Spencer Neal prays that this court grant relief and damages as follows:

**I. PRAYER FOR FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §1 2101, et seq.)**

1. For injunctive relief, compelling Defendants to make Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot, readily accessible to and usable by individuals with disabilities; and to make reasonable modifications in policies, practice, eligibility criteria and procedures so as to afford full access to the goods, services, facilities, privileges, advantages and accommodations being offered.

2. For attorneys' fees, litigation expenses and costs of suit, if plaintiff is deemed the prevailing party; and

3. For such other and further relief as the court may deem proper.

**II. PRAYER FOR SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT KRS 344, *ET SEQ.***

4. For injunctive relief, compelling Defendants to make Seelbach Hilton hotel and the 522 S. 4th Street Parking Lot, readily accessible to and usable by individuals with disabilities, per state law.

5. General and compensatory damages according to proof;

6. All damages for each day, from the inception of the filing of this complaint, on which Defendants have failed to remove barriers which denied plaintiff and other persons with

disabilities full and equal access.

7. Attorneys' fees pursuant to Kentucky law, if plaintiff is deemed the prevailing party;

8. Punitive damages, pursuant to Kentucky law;

9. For all costs of suit;

10. Prejudgment interest pursuant to Kentucky law; and

11. Such other and further relief as the court may deem just and proper.

## III. PRAYER FOR THIRD CAUSE OF ACTION FOR VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT

12. For injunctive relief, compelling Defendants RB Seelbach to remove all false, unfair, deceptive and misleading advertising from its website and other advertisements for the Seelbach Hilton hotel.

13. General and compensatory damages according to proof;

14. All damages for each day, from the inception of the filing of this complaint, on which Defendants continue to permit false, unfair, deceptive, and misleading advertising on its website.

15. Attorneys' fees pursuant to Kentucky law, if plaintiff is deemed the prevailing party;

16. Punitive damages, pursuant to Kentucky law;

17. For all costs of suit;

18. Prejudgment interest pursuant to Kentucky law; and

19. Such other and further relief as the court may deem just and proper.

Respectfully submitted,

BLAKEMORE, MEEKER & BOWLER CO., L.P.A.

/s/ *COLIN G. MEEKER*
COLIN G. MEEKER (Ohio Bar No. 0092980)
495 Portage Lakes Dr.
Akron, OH 44319
Office: (330) 253-3337
Cell: (330) 603-7173
Fax: (330) 253-4131
cgm@bmblaw.com

Attorney for Plaintiff Spencer Neal